## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHELLY ARNOLDI ) | |
| 1383 Bishop Crest Court ) | |
| Alexandria, VA 22308 ) | |
| ) | CASE NO.: |
| Plaintiff, ) | |
| ) | **JURY TRIAL DEMANDED** |
| v. ) | |
| ) | |
| THE BOARD OF TRUSTEES ) | |
| NATIONAL GALLERY OF ART ) | |
| 6th and Constitution, NW ) | |
| Washington, DC 20565 ) | |
| ) | |
| KAYWIN FELDMAN ) | |
| Director of National Gallery of Art ) | |
| 6th and Constitution, NW ) | |
| Washington, DC 20565 ) | |
| ) | |
| Defendants. ) | |
| ) | |

## FEDERAL COMPLAINT

Shelly Arnoldi, by and through undersigned counsel, makes the following complaint under Title VII, 42 U.S.C. § 2000e *et seq.*, for discrimination based on sex, and retaliation for her protected EEO activity and whether she was subjected to a hostile work environment based on sex (female), disparate treatment based on sex (female), and reprisal (initiated the instant EEO complaint) when on June 25, 2019, she was terminated. Ms. Arnoldi demands a trial by jury on all issues so triable.

## JURISDICTION, PARTIES, & EXHAUSTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2.   Defendant, the Board of Trustees of the National Gallery of Art and Kaywin Feldman, Director of the National Gallery of Art ("the Gallery") are sued in their official capacity only.  The National Gallery of Art is an art museum located in Washington, DC. It is a federally funded governmental institution that receives federal financial assistance. The Gallery employed Plaintiff and has more than 500 employees.

3.   National Gallery of Art is located in Washington, D.C., within the physical jurisdiction of this Court.

4.   Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

5.   Arnoldi satisfied the administrative prerequisites for filing suit by contacting an EEO counselor within the required time limits.

6.   On April 20, 2018, Complainant requested Equal Employment Opportunity (EEO) counseling. The EEO Counselor sought to resolve Complainant's allegations to no avail.

7.   On July 19, 2018, the EEO Counselor mailed to Complainant the Final EEO Counseling Report and Notice of Right to File a Formal Complaint of Discrimination.

8.   The notice was sent via FedEx 2-day Delivery Tracking #7017 2400 0000 1581 0693 and was received by Complainant on July 21, 2018.

9.   Complainant's formal complaint was signed and dated July 24, 2018, and filed with the National Gallery of Art (hereinafter referred to as the "Agency," the "Gallery" or "NGA") via email on the same day, pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §2000e, *et seq*.

10. By letter dated August 16, 2018, the Agency accepted the complaint (Claims A through C) pursuant to the Equal Employment Opportunity Commission's (EEOC's) Regulations found in Title 29, Code of Federal Regulations (29 C.F.R.) Part 1614.

11. The Agency conducted a formal investigation of the complaint from August 24, 2018 – May 29, 2019.

12. By letter dated July 18, 2018, Complainant was provided a copy of the Report of Investigation and advised of her rights to request a Final Agency Decision, with or without a hearing before the U.S. Equal Employment Opportunity Commission.

13. By email dated August 13, 2019, Complainant requested a Final Agency Decision without a hearing. Accordingly, this Final Agency Decision is being issued pursuant to Title 29, Code of Federal Regulations (C.F.R.), §1614.110(b).

14. On October 18, 2018, Ms. Arnoldi received a Notice of Proposed Ten-Day Suspension.

15. On February 28, 2019, Ms. Arnoldi received a Letter of Decision suspending her for seven workdays.

16. On April 22, 2019, she received a letter proposing removal from pay and duty status from her position and from Federal service.

17. On June 25, 2019, Plaintiff was removed from the National Gallery of Art.

18. The June 25, 2019, is like or related to the April 22, 2019, Proposal to Remove.

19. On or about October 15, 2019, The Agency issued its Final Agency Decision.

20. Plaintiff herein files this Federal Complaint within 90 days of receiving the Final Agency Decision.

## FACTS

21. At the time of the claims at issue, the Arnoldi (female, participated in prior protected activity) was Deputy Chief of Facilities, Engineering, Facilities Management Division (AFM). She worked for the Gallery for two and one-half years.

22. Arnoldi's first-level supervisor was David Samec (male), former Chief, Facilities Management Division. Upon Mr. Samec's resignation, John Robbins (male), Deputy Administrator, became acting Chief, Facilities Management Division, and the Complainant's first-level supervisor in approximately early March 2019.

23. Darrell Willson (male), Administrator, was the Complainant's second-level supervisor.

24. The Complainant was one of four Deputy Chiefs and department heads within the Facilities Management Division (AFM) in charge of operating and maintaining the NGA's facilities and campus.

25. The other three Deputy Chiefs and department heads were: Rodney Stringer (male), Deputy Chief of Facilities, Operations; Dan Hamm (male), Deputy Chief of Facilities, Services; and Samantha Dennison (female), Deputy Chief of Facilities, Maintenance. Prior to Ms. Dennison's hire in early July 2018, David Houser (male) was Deputy Chief of Facilities, Maintenance.

26. According to Mr. Willson, he received significant feedback from supervisors, GS-13s and GS-14s, about AFM staff not getting along with the Complainant because she was trying to pull rank; she believed that she was Mr. Samec's Deputy Chief, AFM (second in charge of the other Deputy Chiefs who also reported to Mr. Samec and all other AFM staff).

27. Following up on Mr. Willson's December 7, 2016 instructions, Mr. Samec forwarded a December 13, 2016 memorandum to AFM Deputies and Assistant Deputies, providing additional instructions and counseling regarding the need for changes in the following areas in the office: (1) Improve communication among AFM staff, starting with the management team; (2) Improve communications between AFM and the Architecture and Engineering Division

(AAE)[4] in regard to project planning and coordination; and (3) Improve teamwork in AFM by tightening up what AFM staff is portraying or explicitly saying to others outside AFM.

28. Mr. Samec's memorandum notified employees of a number of procedures and protocols that were effective on December 13, 2016, including his mandate that "persons currently working on an AWS [Alternative Work Schedule] schedule will end AWS after PP 26 (January 7, 2017). "I will work with the Administrator on a case-by-case basis for approval of AWS thereafter. The CoC [Chain of Command] will need to come in with the person requesting AWS to explain why it is necessary. Mere convenience is not a reason. AWS will continue to be exempt for Operations, Maintenance, and Building Services staff."

29.  The EEO Counselor's Report indicates that the Complainant first initiated an EEO complaint when she contacted the NGA's EEO Office on April 20, 2018, thereby initiating the informal EEO counseling process. The Complainant alleged that she was being subjected to disparate treatment and harassment, by the male Deputy Chiefs and some of the male Assistant Deputy Chiefs.

30. The Complainant also raised allegations of harassment with the Personnel Officer, Douglas Goodell, in April 2018, based on sex. As a result of this reporting to the Personnel Office, an independent management investigation was conducted by Rocky Rocomora; the investigative report was issued on August 13, 2018.

31. On September 12, 2018, Douglas Goodell, Personnel Officer, notified the Complainant of the investigator's findings. Mr. Goodell stated, in relevant part: "While it is clear from the record that there have been ongoing communication and collegiality issues within AFM, there is insufficient evidence to show that these issues are based on gender. The Gallery

has already taken numerous steps to address the issues through team building, individual coaching, and appropriate corrective action as needed."

32. By letter dated October 18, 2018, Mr. Samec notified the Complainant that he was proposing to suspend her for 10 days for: (1) unprofessional conduct, (2) disruptive conduct, (3) failure to follow proper supervisory instruction, (4) violating a procurement standard of conduct, and (5) lack of candor.

33. After the Complainant responded to the proposal to suspend, on February 28, 2019, Michelle Fondas (female), Chief Registrar and Head of the Division of Registration and Loans, who was the deciding official on the proposal to suspend issued a Decision on the proposal. Ms. Fondas found that documentation supported Mr. Samec's rationale for the suspension; and she decided to suspend the Complainant for seven work-days.

34. Complainant's response to the proposed suspension was accurate and truthful. Complainant did not submit a false written statement. Complainant's statement "I did not receive counseling or a warning that I had acted inappropriately" is true. The statement, "Remember I cancelled all AWS and Telework for Deputies and Assistants starting this week?" is not a counseling or a warning. Dave Samec's letter dated 9/13/17 stated "Ad Hoc telework for AFM Deputies and Assistant Deputies shall be considered on a case-by-case basis." Complainant continued to request telework and received approval for Ad Hoc Telework up to the time she received the suspension recommendation.

35. In the email from Mr. Samec dated 12/8/18, Mr. Samec approved Complainant's request to telework that day and asked for her to coordinate future requests "further in advance". Complainant had requested Ad Hoc telework per the NGA Telework policy, in the same manner that she had done in the past, and it was approved. Mr. Samec's reminder of his letter did not

appear to be counseling or a warning that Complainant acted inappropriately as he clearly stated, "approved for today". Therefore, Complainant did not make a false statement.

36. The discussion that Mr. Samec and Complainant had on 4/13/18 was about a "perception" that she teleworked a lot and a reminder that telework is not to be abused. Complainant was never told that she was being counseled or warned that she acted inappropriately. Therefore, Complainant did not make a false statement.

37. On 5/24/18, Mr. Samec disapproved Complainant's telework request. The Gallery telework policy does not state that an employee cannot request Ad Hoc telework. Complainant did not perceive the disapproval of my request for Ad Hoc telework as counseling or that she had acted inappropriately. Complainant was aware that other AFM employees had been using Ad Hoc Telework and she requested in the same manner that she had in the past. Therefore, Complainant did not make a false statement.

38. Note that the four counts of "failure to follow" regarding the handful of telework hours Complainant took 8/20/18, 8/21/18, 8/27/18, 8/28/18 were in the same pay period and were discussed with Mr. Samec as one incident. In those four counts, Mr. Samec approved the telework, in the same instance – Mr. Samec reminded Complainant of the Gallery telework policy and approved her timesheet – which is why Complainant did not perceive his reminder of the telework policy as counseling or a warning that she acted inappropriately.

39. While the Complainant served the suspension, Agency email documentation reflects that: (1) the Complainant conducted NGA business via email on at least 40 occasions, in direct violation of Mr. Robbins March 13, 2019, email directing the Complainant that she was not allowed to work on Gallery business during her suspension; and (2) the Complainant had not been truthful in some of her responses to the proposed suspension.

40. Complainant has always received outstanding evaluations for her performance, and Mr. Samec confirmed that her performance with regards to work (engineering, project management and contracting) was outstanding, even on the day he proposed the suspension. Complainant acknowledged that she was suspended from pay and duty status but had no reason to believe that she was forbidden to perform work on a voluntary basis. Complainant's access to gallery e-mail and financial systems remained available to her, and she continued to do a few things on a voluntary basis out of loyalty to her position. Complainant has worked very hard to develop a strong engineering team and establish positive relationships within her department and she wanted to ensure procurement processes remained in accordance with the federal acquisition regulations and Gallery circulars and policies. Complainant continued to volunteer her input and experience to her department during the suspension to ensure continuity. Complainant volunteered to process invoices in the same manner as she had done in the past to ensure payments were made and avoid late fees or penalties.

41. Complainant had received no input on her performance or conduct since receiving Mr. Samec's letter recommending suspension on October 18, 2018. After Mr. Samec left the Gallery February 22, 2019, Mr. John Robbins was appointed as acting Chief of AFM and he became her immediate supervisor. One week later, on February 28th, 2019, Complainant received a decision letter from Michelle Fondas suspending her from pay and duty status for seven days. In response to this letter, and in compliance with Circular 23, Complainant submitted a letter to Mr. Robbins March 1, 2019 asking for the suspension to be delayed until an ongoing EEO investigation has been completed. Mr. Robbins responded by upholding the suspension. Upon receiving Mr. Robbin's letter, Complainant requested input on her performance and conduct both verbally and in writing. Initially Mr. Robbins stated that he could not provide input

because he had not supervised her for 90 days. Therefore, Complainant requested input from her second level supervisor, Mr. Darrell Willson. On March 8, 2019 Complainant asked Mr. Robbins when she could receive feedback and meet with Mr. Willson and he stated, "Mr. Willson will never meet with you". Since receiving the proposed suspension letter October 18, 2018, Complainant had received no negative input regarding her conduct or performance from any supervisor or senior staff working in her chain of command.

42. Accordingly, on April 22, 2019, Mr. John Robbins, now acting Chief of AFM, proposed to terminate the Complainant from pay and duty status from her position as Deputy Chief of Facilities Management, Engineering for: (1) submitting a false written statement; (2) conduct prejudicial to the Gallery; and (3) unauthorized approval of invoice payment. On the same day, he placed the Complainant on paid administrative leave pending the outcome of the proposed termination.

43. On June 25, 2019, Nancy Hoffman, Manager of Fine Arts Risk and Special Projects, Office of the Treasurer, and the deciding official on the proposed termination issued the NGA's decision terminating the Complainant, effective June 28, 2019.

44. On a continuing basis, Facilities Management's Assistant Deputy Chiefs and Deputy Chief harass her during weekly deputy staff meetings, coaching sessions, and in email communications.

45. On or about August 2017, Complainant's supervisor did not delegate her to act in his absence, and she was forced to take turns with the subordinate male GS-14 employees.

46. On or about the spring 2017, Complainant's supervisor offered her a pink hard hat to use onsite, and he has referred to her as a single mom.

47. In 2018, Complainant's supervisor hired a contractor without her knowledge, with no defined scope of work and assigned the contractor to her staff.

48. In April 2018, Complainant was not selected to participate on the selection panel for a GS-14 Deputy Chief position.

49. On May 24, 2018, Complainant's supervisor denied her request to telework on May 25, 2018.

50. On around September 17, 2018, Complainant was denied authority to approve AWS and Ad Hoc telework for a new employee, Sujit Nathan.

51. On September 18, 2018, Complainant's September 10, 2018 request to continue the employment of a subordinate, Bryan Allen, was denied.

52. Management did not approve Complainant's request to grant a monetary award to her subordinate, Wade Brightwell. Complainant learned of this denial on August 22, 2018.

53. On September 14, 2018, management did not support her appraisal rating given to a subordinate employee, Ted Huynh.

## COUNT I
## TITLE VII DISCRIMINATORY TREATMENT BASED ON GENDER

54. Plaintiff herein incorporates by reference all preceding paragraphs herein.

55. The aforementioned actions stated above, taken by the Agency against Plaintiff, were motivated by Plaintiff's gender.

56. Persons outside of Plaintiff's protected group, women, were not subjected to these aforementioned acts.

57. Said acts were adverse to Plaintiff and caused tangible harm to her.

58. Said acts affected Plaintiff's rights, benefits and conditions of her employment.

59. Because of the Agency's actions, Plaintiff suffered lost income, benefits, and the opportunity for future promotions and employment, as well as mental and emotional distress.

## COUNT II
## TITLE VII DISCRIMINATORY TREATMENT BASED ON RETALIATION

60. Plaintiff herein incorporates by reference all preceding paragraphs herein.

61. Arnoldi complained to her supervisor Douglas Goodell about a hostile work environment based on her gender on or about April 15, 2018.

62. David Samec contended he became aware of Plaintiff's EEO Complaint around June 7, 2018.

63. On or about March 4, 2019, Douglas Goodell was asked to provide an affidavit to an EEO investigator about this matter.

64. Mr. Goodell attested in that affidavit he only had knowledge of Plaintiff's current EEO Complaint around that time.

65. Said complaint was protected Title VII activity.

66. As stated above, Plaintiff also participated in protected EEO activity in April and July of 2018.

67. The aforementioned actions stated above after April 2018, taken by the Agency against Plaintiff, were motivated by Plaintiff's EEO protected activity.

68. Persons outside of Plaintiff's protected group, persons who did not complain about discrimination or file EEO Complaints were not subjected to these aforementioned acts.

69. Said acts were adverse to Plaintiff and caused tangible harm to her.

70. Said acts affected Plaintiff's rights, benefits and conditions of her employment.

71. Because of the Agency's actions, Plaintiff suffered lost income, benefits, and the opportunity for future promotions and employment, as well as mental and emotional distress.

## COUNT III
## HOSTILE WORK ENVIRONMENT BASED ON GENDER AND RETALIATION

72. Plaintiff herein incorporates by reference all preceding paragraphs herein.

73. Arnoldi was subjected to a severe and pervasive hostile work environment due to the aforementioned actions against her.

74. Arnoldi was subject to an environment that was objectively and subjectively hostile. As stated above, gender based discrimination is made unlawful by Title VII's prohibition on sex-based discrimination.

75. This conduct had the effect of interfering with her work in the workplace, causing her work to be interrupted and interfered with. As such, these actions affected her rights, benefits and conditions of employment.

76. Mr. Goodell did not properly address Plaintiff's said complaint.

77. The aforementioned actions after April 15, 2018, continued a hostile environment which materially altered Plaintiff's working conditions and which constitutes harassment.

78. This conduct continued based on Arnoldi's gender in violation of Title VII.

79. This conduct continued based on Arnoldi's discrimination complaints in violation of Title VII.

80. Because of the Agency's actions, Arnoldi suffered as a direct, foreseeable, and proximate result of Defendants' unlawful actions, economic losses, emotional distress, humiliation, shame, and embarrassment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Agency as follows:

A.   That the Court order the Agency to pay compensatory damages, including but not limited to, lost back pay, plus interest, lost fringe benefits and future lost earnings and fringe benefits, damages for emotional distress and pain and suffering, according to proof allowed by law;

B.   That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

C.   That the Court grant Plaintiff all employment benefits she would have enjoyed had she not been discriminated and retaliated against;

D.   That the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees;

E.   That the Court grant Plaintiff an award of prejudgment and post-judgment interest;

F.   That the Court reinstate Plaintiff into her position; and

G.   That the Court grant Plaintiff all other relief the Court deems just and proper.


Dated: January 13, 2020

*Morris E. Fischer, Esq./S/*
Morris E. Fischer, Esq.
Morris E. Fischer, LLC
8720 Georgia Avenue, Suite 210
Silver Spring, MD 20910
301- 328-7631 Office
301- 328-7638 Fax
Attorney for Plaintiff

## **JURY DEMAND**

The plaintiff hereby demands a jury trial on all issues so triable.


Dated: January 13, 2020                                    *Morris E. Fischer, Esq./S/*
                                                           Morris E. Fischer, Esq.
                                                           Morris E. Fischer, LLC
                                                           8720 Georgia Avenue, Suite 210
                                                           Silver Spring, MD 20910
                                                           301- 328-7631 Office
                                                           301- 328-7638 Fax
                                                           Attorney for Plaintiff